**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Anthony Ray Spann, aka Ray Dunham,  Civil No. 08-41 (DWF/JJK)

    Plaintiff,

v.  **MEMORANDUM
OPINION AND ORDER**

City of Minneapolis; Karl Olson; Steven
J. Herron; and Calvin D. Cook,

    Defendants.

_____

Karl E. Robinson, Esq., Winthrop & Weinstine, counsel for Plaintiff.

Darla Jo Boggs, and Timothy S. Skarda, Assistant Minneapolis City Attorneys, Minneapolis City Attorney's Office, counsel for Defendants.

_____

**INTRODUCTION**

This matter is before the Court on a Motion for Summary Judgment brought by Defendants City of Minneapolis, Karl Olson, Steven J. Herron, and Calvin D. Cook (collectively, "Defendants"). In his Amended Complaint, Plaintiff Anthony Ray Spann asserts violations of 42 U.S.C. § 1983 for unlawful arrest, excessive force, and denial of medical treatment.[1] In addition, Spann asserts state-law claims for assault, battery, and

---

1  In Count Four of his Amended Complaint, Spann asserts a cause of action for false imprisonment under 42 U.S.C. § 1983. In his opposition, however, Spann's false imprisonment arguments focus only on a state-law claim of false imprisonment. The Court therefore treats it as such. In addition, Spann has agreed to the dismissal of his claims for conspiracy to violate civil rights under 42 U.S.C. § 1985 (Count Five), the
                                                                           (Footnote Continued on Next Page)

false arrest. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## BACKGROUND

On January 13, 2006, Plaintiff Anthony Spann was arrested by Minneapolis Police Officers Steven J. Herron and Calvin D. Cook. Shortly before his arrest, at approximately 12:15 a.m., Spann was standing with a group of people near 11th Street and Currie Avenue North in Minneapolis. (Aff. of Darla J. Boggs in Supp. of Defs.' Mot. for Summ. J. ("Boggs Aff.") ¶ 3, Ex. A (Dep. of Calvin Cook ("Cook Dep.")) at 36-37.) At the time, Spann was homeless and planned to sleep at the Salvation Army shelter located at 1010 Currie Avenue North. Spann asserts that he was standing on the public sidewalk next to the parking lot of Hy's Pawn Shop. (Spann Decl. ¶ 2; Aff. of Karl E. Robinson ("Robinson Aff.") ¶ 2, Ex. A (Dep. of Anthony Spann ("Spann Dep.")) at 69-70.) Defendants assert that Spann was standing with others in the parking lot.[2] Defendants also assert that the parking lot was marked with no trespassing signs and was known to be an area of high crime and illegal drug transactions. (Boggs Aff. ¶ 5, Ex. C (Dep. of Steven J. Herron ("Herron Dep.")) at 10, 14); Cook Dep. at 41.)

---

(Footnote Continued From Previous Page)
*Monell* violation under 42 U.S.C. § 1983 (Count Six), and failure to prevent a violation of constitutional rights under 42 U.S.C. § 1986 (Count Seven).

[2]    Defendants assert that Spann originally testified at his deposition that he was standing in the parking lot and only asserted that he was standing on a public sidewalk in his declaration in opposition to summary judgment.

While Spann was standing in the group, Spann asserts that Officers Herron and Cook "came speeding from around the corner" in a squad car and "bolted from their vehicle." (Spann Decl. ¶ 3.) The officers then asked the group what they were doing. (Spann Dep. at 70.) Spann asked Officers Herron and Cook to stop harassing him and said something to the effect: "Why don't you leave us the fuck alone?" (Spann Decl. ¶ 4; Spann Dep. at 70.) Defendants assert that when they drove up, Spann ran away. (Cook Dep. at 43; Herron Dep. at 10-11.) Both Officers Herron and Cook assert that they ran after Spann and observed Spann reach into his pocket and throw what appeared to be baggies onto the roof of the pawn shop. (Herron Dep. at 10-12; Cook Dep. at 44-47.) In his declaration, Spann claims that he neither fled from the police nor threw anything from his pockets. (Spann Decl. ¶¶ 11-13.)

The officers claim that they caught up to Spann in an alley and pushed him from behind, causing him to fall forward onto the ground. Spann denies that he ran, but claims that he was struck by surprise and that his knee and head hit the pavement. (Spann Dep. at 31.) Spann asserts that the officers then repeatedly kicked and punched him. (Spann Decl. ¶ 6; Spann Dep. at 31-32.) Spann also asserts that the officers grabbed his thumb and violently twisted it and that one of the officers said "let's break his thumb." (Spann Decl. ¶ 7; Spann Dep. at 28.) Defendants assert that Spann was directed, but refused, to put his hands behind his back and that they struck Spann's torso to get his hands out from underneath his body. (Cook Dep. at 51, 55-56, 61; Herron Dep. at 22-23.) Spann contends that the officers beat him continuously until he was placed in the squad car, and

that he was beaten while handcuffed in the squad car. (Spann Dep. at 68.)

After Spann was placed in the squad car, Officer Cook climbed up to the roof of the pawn shop, but was unable to find the items that he believed Spann threw up there. (Cook Dep. at 71, 74.) The officers also called Sergeant Karl Olsen who came to the scene. Spann asserts that he requested that his handcuffs be loosened and that he asked to see a doctor. (Spann Dep. at 30, 32.) Spann further asserts that Sergeant Karl Olsen, Officer Cook, and Officer Herron all refused to adjust his handcuffs and failed to provide medical assistance. (Spann Dep. at 30.)

Spann was arrested and charged with loitering with intent to possess narcotics and with fleeing an officer on foot. Spann was booked into the Hennepin County Adult Detention Center. Spann asserts that he requested to be transferred to the Hennepin County Medical Center due to the injuries he suffered from the alleged assault by the police officers. (Spann Decl. ¶ 17.) Defendants assert that Spann refused medical treatment at the Hennepin County Adult Detention Center. (Cook Dep. at 79; Boggs Aff. ¶ 7, Ex. E.) Spann was released on January 13, 2006, and sought medical attention that same afternoon. At the hospital, the medical staff observed multiple contusions and abrasions to Spann's face, back, and hand. (Boggs Aff., Ex. F.) In addition, the medical examination revealed a possible sprain to his right thumb, but no fractures. (*Id.*) Spann's thumb was placed in a splint.

Spann alleges that he has suffered injuries to the back of his head, neck, lower back, right thumb, left shoulder, left arm and left knee as a result of the encounter with

Officers Herron and Cook. (Spann Dep. at 37-38.) Spann asserts that he has received continuing medical treatment for these injuries. Spann also asserts that he suffers from emotional injuries and that the alleged assault caused and exacerbated other mental health issues, for which he continues to obtain treatment.

## DISCUSSION

### I.    Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set

forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     Qualified Immunity and Federal Claims

Spann asserts several federal claims against Defendants, including unlawful arrest, excessive force, and denial of medical treatment.  Defendants contend that they are protected by qualified immunity against Spann's federal claims.  Qualified immunity shields government officials as well as private individuals from civil liability under 42 U.S.C. § 1983.  *Wilson v. Layne*, 526 U.S. 603, 614 (1999).  A defendant is shielded from civil liability if it is shown that his or her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

On a motion for summary judgment, the Court employs a three-part test to determine whether qualified immunity exists.  *Goff v. Bise*, 173 F.3d 1068, 1072 (8th Cir. 1999) (citing *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996)).  First, the plaintiff must assert a violation of a constitutional right.  *Id*.  Second, the alleged right must be clearly established.  *Id*.  Third, taking the facts in the light most favorable to the plaintiff, there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action violated the plaintiff's clearly established rights.  *Id*.  "Qualified immunity is available 'to all but the plainly incompetent or those who knowingly violate the law.'"  *Avalos v. City of Glenwood*, 382 F.3d 792, 798 (8th Cir. 2004) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

### A.     Unlawful Arrest under 42 U.S.C. § 1983

Spann asserts that he was unlawfully arrested in violation of his Fourth Amendment rights. There is no dispute that Spann's arrest occurred without a warrant. A warrantless arrest violates the Fourth Amendment unless it is supported by probable cause. *Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir. 2000) (citing *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir. 1986)). Probable cause exists if the totality of facts, based on reasonably trustworthy information, would justify a prudent person in believing the individual arrested had committed an offense at the time of the arrest. *Id*. Officers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause, so long as the mistake is objectively reasonable. *Id*. (explaining that the issue for immunity purposes is whether there is arguable probable cause).

Defendants assert that Officers Herron and Cook reasonably believed that Spann was engaged in unlawful conduct. Specifically, Defendants contend that the officers relied on their own observation that numerous individuals were standing together in a "no trespassing" area, that Spann fled and threw something onto the roof of Hy's Pawn Shop, and that Spann resisted arrest. Spann, however, has a different version of the facts; specifically, that he did not flee, he did not remove and throw anything from his pockets, and he did not resist arrest. Even accepting Spann's facts as true, Defendants assert that a reasonable officer would have concluded that Spann committed an unlawful act because he was loitering in a "no trespassing" area in an area known for high crime and drug

transactions. Spann, however, counters that he was standing on a public sidewalk. Finally, Defendants maintain that even if the Court concludes that Officers Herron and Cook lacked probable cause, the officers are still entitled to qualified immunity because they reasonably, though mistakenly, believed that probable cause existed.

For purposes of this motion, the Court accepts that Spann was simply standing on a public sidewalk in an area known for high crime and drug transactions, did not flee, and did not throw anything from his pockets. Viewing the facts in the light most favorable to Spann, the Court finds that an officer of reasonable competence would have known that there was no arguable probable cause to arrest Spann. Accordingly, Defendants' motion for summary judgment is denied with respect to Spann's claim for unlawful arrest.

### B. Excessive Force Under 42 U.S.C. § 1983

Spann asserts excessive force claims against Officers Herron and Cook.[3] Specifically, Spann asserts that Officers Herron and Cook used force when no force was necessary. Defendants, on the other hand, assert that they are entitled to qualified immunity on Spann's claim of excessive force. Defendants acknowledge that the facts as recited by Spann (that he was doing nothing other than standing on a public sidewalk when officers approached him and began to beat him without provocation) would demonstrate inappropriate use of force. (Defs.' Reply Mem. in Supp. of Mot. for Summ.

---

[3] Originally, Spann asserted his excessive force claim against all defendants. However, because Spann has agreed to dismiss his *Monell* claim, Spann's excessive force claim is against Officers Herron and Cook only.

J. at 4.) However, Defendants contend that Spann's recitation of the facts is supported entirely by self-serving declarations and testimony and that objective evidence in the record is not consistent with the facts as described by Spann. Defendants further contend that, even accepting Spann's factual recitation, Spann's excessive force claim fails because Spann's injuries were *de minimus* in nature.

The right to be free from excessive force is clearly established under the Fourth Amendment's prohibition of unreasonable seizures of the person. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). The Court evaluates excessive force claims under an objective-reasonableness test. *Id*. at 397. In determining whether the use of force is "reasonable" under the Fourth Amendment, a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the government's interests at stake. *Id*. at 396 (citation omitted). The reasonableness of the use of force must be judged from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *See id*. The reasonableness determination also must make allowances for the fact that police officers make split-second judgments in oftentimes tense situations. *Id*. at 396-97. Therefore, the United States Supreme Court has set out the reasonableness inquiry as one that requires courts to determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397 (citing *Scott v. United States,* 436 U.S. 128, 137-39 (1978)). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of

force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id*. at 396 (citations omitted).

Courts also consider the result of the force in analyzing a claim for excessive force. *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003.) Assuming without deciding that a plaintiff must demonstrate some minimum level of injury, the Eighth Circuit has ruled that the necessary level of injury required for a Fourth Amendment excessive force claim is "actual injury." *Lambert v. City of Dumas*, 187 F.3d 931, 936 (8th Cir. 1999); *Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir. 1995). The Eighth Circuit has held that the following examples constitute "actual injury": (1) "bruises and a facial laceration"; (2) "bruised knees and elevated blood pressure"; (3) "posttraumatic stress disorder"; or (4) a "single small cut of the lateral right eyelid and small scrapes of the right posterior knee and upper calf." *Lambert*, 187 F.3d at 936 (citations omitted). However, the Eighth Circuit has ruled that "a de minimus . . . injury is insufficient to support a finding of a constitutional violation." *Crumley*, 324 F.3d at 1007. Thus, not every push or shove violates the Fourth Amendment. *Id*.

The evidence before the Court demonstrates that Spann suffered, at minimum, multiple contusions and abrasions to his face, back, and hand. In addition, Spann has pointed to evidence that he suffered a sprain to his right thumb, as well as injuries to the back of his head, neck, lower back, left shoulder, left arm, and left knee as a result of the encounter with Officers Herron and Cook. Spann receives continuing medical treatment for his injuries and for mental health issues that he asserts were caused or exacerbated by

10

the alleged assault.  Consequently, the Court determines that Spann has presented sufficient evidence of actual injury to overcome Defendants' assertions of qualified immunity and thus to survive summary judgment.  The Court notes that in so holding, the Court is not concluding that, as a matter of law, excessive force was used by Officers Herron and Cook.  Rather, the Court simply concludes that a reasonable jury could find, on the facts at issue here, that excessive force was used by the officers in their treatment of Spann.

### C. Denial of Medical Assistance

Spann also asserts that Officers Herron and Cook and Sergeant Olson violated his right to medical assistance.[4]  The law recognizes deliberate indifference to a prisoner's serious medical needs under the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  To establish a constitutional violation based on deliberate indifference to medical needs, Spann must demonstrate that (1) he suffered from an objectively serious medical need; and (2) that the defendants knew of the need and deliberately disregarded it.  *Id*. at 106.  Deliberate indifference requires proof of a reckless disregard of a known risk.  *Coleman v. Parkman*, 349 F.3d 534, 539 (8th Cir. 2003).  A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.

---

[4] In his Amended Complaint, Spann asserts his denial of medical assistance claim under both the Fourth and Eight Amendments.  However, Spann only addresses the Eighth Amendment in his opposition to the present motion. Therefore, the Court will

(Footnote Continued on Next Page)

*Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). In addition, when considering a claim for the denial of medical assistance under the Eighth Amendment, the Court also looks at the effect of a delay in medical treatment. *Id*. at 784.

Spann argues that he suffered from a serious medical need and that the defendants knew of his medical need but deliberately disregarded it. In particular, Spann asserts that he complained to defendants that he was in pain and that they laughed and refused treatment. Spann further asserts that he asked for medical treatment when he was booked, but again he was refused.

Here, Spann has not submitted evidence that he was suffering from an objectively serious medical need when he was detained and booked, or that that need was deliberately disregarded. Although Spann was injured during the incident with Officers Herron and Cook, the record does not demonstrate that his injuries were serious enough to establish an Eighth Amendment violation. In addition, Spann has not pointed to record evidence to show a detrimental effect of a delay in his medical treatment. Therefore, even viewing the facts in the light most favorable to Spann, the Court finds that no reasonable juror could conclude that Spann was denied medical care in violation of his Eighth Amendment rights. Accordingly, Spann's claim for denial of medical treatment is dismissed.

### III.    Official Immunity and State-Law Claims

Under Minnesota law, public officials are automatically entitled to official

---

(Footnote Continued From Previous Page)
analyze the viability of Spann's claim under the Eighth Amendment only.

immunity from state law claims when their duties require the exercise of discretion, so long as the officer is not guilty of a willful or malicious wrong. *Johnson v. Morris*, 453 N.W.2d 31, 41-42 (Minn. 1990); *Elwood v. Rice County*, 423 N.W.2d 671, 677 (Minn. 1988). Malice, in the official immunity context, means intentionally committing an act that the official has reason to believe is legally prohibited. This is an objective inquiry that examines the legal reasonableness of an official's actions. *State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571-72 (Minn.1994).

Spann asserts state law causes of action for assault and battery against Defendants.[5] Defendants contend that they are entitled to official immunity on the assault and battery claims. An assault is an unlawful threat to do bodily harm to another with the present ability to carry out the threat. *Johnson*, 453 N.W. 2d at 41. Battery is "an intentional, unpermitted offensive contact with another." *Id.* at 40. As discussed above with respect to Spann's § 1983 claim for unlawful arrest and excessive force, there is sufficient record evidence to allow a reasonable juror to conclude both that Spann's arrest occurred without legal justification and that the force used in arresting Spann was excessive. For the reasons that the Court denied summary judgment on Spann's claims

---

[5] Spann asserts that the City of Minneapolis is liable on each of the state law tort claims because the claims occurred within the scope of the officer's employment. Under the doctrine of respondeat superior, an employer is vicariously liable for the torts of an employee committed within the course and scope of his or her employment. *Fahrendorff v. N. Homes, Inc.*, 597 N.W.2d 905, 910 (Minn. 1999). There is sufficient record evidence that the alleged torts of Officers Herron and Cook occurred within the course and scope of employment so as to survive summary judgment.

for unlawful arrest and excessive force under § 1983, the Court similarly concludes that summary judgment is inappropriate on his state law claims of assault and battery.

Spann also asserts a cause of action for false arrest against Defendants. The elements of a claim for false arrest are: (1) an arrest performed by the defendant, and (2) the unlawfulness of such arrest. *Lundeen v. Renteria*, 224 N.W.2d 132, 135 (Minn. 1974). For the reasons discussed above with respect to Spann's federal claim for unlawful arrest, there are genuine issues of material fact that preclude summary judgment on this claim.

Finally, Spann asserts a claim of false imprisonment against all Defendants. The common law regarding false imprisonment states that an individual may not, without legal justification, be confined against her or his will. *Gleason v. Metro. Council Transit Operations*, 563 N.W.2d 309, 319 (Minn. Ct. App. 1997) (citing *Kleidon v. Glascock*, 10 N.W.2d 394, 397 (1943) (false imprisonment is any imprisonment that is not legally justifiable)). Spann claims that because there was no probable cause supporting Defendants' arrest of Spann, Spann's imprisonment was likewise legally unjustifiable. Again, because there are factual issues with respect to the legality of Spann's arrest, fact issues remain with respect to Spann's claim for false imprisonment. Accordingly, summary judgment on Spann's false imprisonment claim is denied.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment (Doc. No. 21) is **GRANTED**

**IN PART** and **DENIED IN PART** as follows:

a. Defendants' Motion for Summary Judgment as to Plaintiff Anthony Spann's claims of unlawful arrest, excessive force, assault, battery, false arrest, and false imprisonment (Counts One, Two, Four, Eight, Nine, and Ten of the Amended Complaint, Doc. No. 14) is **DENIED**;

b. Defendants' Motion for Summary Judgment as to Plaintiff Anthony Spann's claims of denial of medical treatment, conspiracy to violate civil rights, *Monell* claim, and failure to prevent a violation of constitutional rights (Counts Three, Five, Six, and Seven of the Amended Complaint, Doc. No. 14) is **GRANTED**.  These claims are **DISMISSED WITH PREJUDICE**.

Dated:  March 25, 2009            s/Donovan W. Frank
                                  DONOVAN W. FRANK
                                  Judge of United States District Court